IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. __1:23-cv-01198_____

DOUGLAS G. BOHM,

    Plaintiff,

v.

WYOLAW, LLC d/b/a SUMMIT LAW FIRM LLC,

    Defendant.

## COMPLAINT

NOW comes DOUGLAS G. BOHM ("Plaintiff"), by and through the undersigned, complaining as to the conduct of WYOLAW, LLC d/b/a SUMMIT LAW FIRM, LLC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.,* the Colorado Credit Services Organization Act ("CCSOA") pursuant to Colo. Rev. Stat. § 5-19-101 *et seq.,* as well as the Colorado Uniform Debt-Management Services Act ("CDMSA") pursuant to Colo. Rev. Stat. § 5-19-201 *et seq.,* stemming from Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendant conducts business within the District of Colorado and a substantial portion of the events or omissions giving rise to the claims occurred within the District of Colorado.

## PARTIES

4. Plaintiff is a consumer over 18 years of age residing in Longmont, Colorado, which lies within the district of Colorado.

5. Defendant is a law firm, credit repair organization, and debt settlement provider that provides its clients a variety of services, including a program wherein consumers enroll debts that Defendant will subsequently negotiate settlements of on behalf of consumers so that such consumers can go about resolving outstanding debts and improve their credit. Defendant is a limited liability company organized under the laws of the state of Wyoming with its principal place of business located at 5830 East Second Street, Casper, Wyoming 82609.

6. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

7. In approximately 2019, Plaintiff was interested in taking care of several debts he had incurred over the years and which were negatively impacting his credit, and began researching potential debt relief companies.

8. In connection therewith, Plaintiff came by Defendant upon viewing their advertisements online.

9. Upon speaking with Defendant, Plaintiff informed them about the credit issues he wanted addressed.

10. Defendant informed Plaintiff that, through its services, Plaintiff would make certain monthly payments to Defendant, and in turn Defendant would take such payments and use them to resolve debts impacting his credit for less than the balance owed, and that by doing so these debts would no longer impact Plaintiff's credit.

11. Defendant repeatedly represented the efficacy of its services and its ability to achieve better results than its competitors.

12. Defendant represented that its services would result in Plaintiff's credit improving within 90 days of making his first payment, explicitly stating that Plaintiff could expect an approximately 30 point increase with each debt Defendant was able to settle.

13. Defendant represented that a purpose of its services was to improve Plaintiff's credit and that its services would in fact improve Plaintiff's credit, as its services would decrease the debt load impacting Plaintiff's credit, and in turn improve Plaintiff's credit history.

14. Finding the nature of Defendant's representations desirable and believing Defendant would be able to successfully resolve the subject debts within the timeframe represented, Plaintiff agreed to engage in Defendant's services and the parties executed a contract for the provision of services.

15. The terms of the plan required that Plaintiff make monthly payments of approximately $415.56, and the program was set to run until September 2022, at which point Defendant represented that all of Plaintiff's enrolled obligations would be resolved.

16. Of Plaintiff's monthly fee, a sizeable portion went to upfront fees in connection with "legal" services offered by Defendant despite such services not actually being performed prior to accepting payments.

17. Plaintiff enrolled a number of debts in Defendant's program, with Defendant representing that such debts would be resolved within the plan's timeframe.

18. After Plaintiff agreed to use Defendant's services, he was told to cease making payments on his enrolled obligations and instead divert those sums to Defendant for its monthly fees.

19. Plaintiff faithfully made his monthly payments to Defendant, totaling thousands of dollars, from inception through September 2022.

20. After the first 90 days of making payments, Plaintiff would ask when he could expect the represented improvement, and Defendant advised that the results were coming, he just needed to wait a further 90 days.

21. Defendant proceeded to string Plaintiff along throughout the life of their dealings without ever completing the services or delivering the results represented.

22. Despite Plaintiff making all of the payments required under the contract, the largest debt Plaintiff enrolled had yet to be resolved.

23. Upon realizing that Plaintiff was nearing the end of his monthly payments and that Defendant had failed to fully perform the agreed-upon services, Defendant continued charging Plaintiff for its services past the terms of the original agreement, and did so because there was purportedly insufficient funds from which a settlement could be made.

24. Upon information and belief, Defendant's practice of charging unlawful and inappropriate fees diverted sums from Plaintiff's dedicated account, which in turn necessitated the enlargement of time Plaintiff needed to make payments.

25. Upon further information and belief, Defendant's conduct is part of its overarching scheme to get consumers to pay more for its services, both by underinflating the amount consumers

will need to pay on the front end, and simultaneously charging improper and undisclosed fees assessed against Plaintiff's payments that should have gone towards resolving the enrolled debts.

26. Plaintiff suffered severe emotional distress, as well as significant out of pocket expenses and persistently depressed credit scores as a result of Defendant's deceptive and misleading bait-and-switch tactics.

27. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

28. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant, further out of pocket expenses, as well as numerous violations of his state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

29. Plaintiff repeats and realleges paragraphs 1 through 28 as though fully set forth herein.

30. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

31. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

32. At all relevant times, Defendant represented that both an explicit and implicit purpose of its services would be the ultimate improvement of Plaintiff's credit, as the services would go

5

towards minimizing the debt load impacting Plaintiff's credit, which would ultimately improve his credit.

    a.  **Violations of CROA § 1679b(a)**

33. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

34. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it was providing Plaintiff. Defendant represented to Plaintiff, when attempting to convince Plaintiff to utilize its services, that his set payments over a certain period of time would result in Defendant settling the enrolled debts within the timeframe outlined. However, despite the program running its course, Defendant failed to address the entirety of the enrolled obligations. Upon information and belief, Defendant's estimate for the length of time needed to resolve the debts intentionally underinflated the amount of time and/or money necessary to resolve such debts, knowing that Defendant would later demand further sums. Defendant's scheme seeks to get consumers "pot-committed," for lack of a better term, which makes such consumers more susceptible to requests for further payments after Defendant failed to perform the services within the agreed-upon time frame.

35. Defendant further violated the above provisions of the CROA through its deceptive representations that Plaintiff's credit would improve within 90 days of signing up with Defendant. Defendant makes these representations to consumers in order to convey that it can deliver results

fast; however, its representations were inherently false as Defendant only caused Plaintiff's credit to be negatively impacted throughout the life of the parties' dealings with any improvement to Plaintiff's credit coming much later than initially represented.

36. Defendant violated the above references provisions of the CROA through the generally deceptive and misleading nature in which it held out its services to Plaintiff. Defendant promised Plaintiff that its program and partnerships would result in all of Plaintiff's debts being resolved and addressed; however, Defendant failed to meaningfully perform the services it represented it would perform.

37. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it was providing Plaintiff. When Plaintiff would ask for updates on Defendant's workings, Defendant simply persisted in giving Plaintiff the runaround so as to continue receiving payments without providing the results that induced such further payments. Upon information and belief, Defendant engages in this conduct on a wide and frequent basis in furtherance of its own bottom line. Plaintiff has suffered significant damages as a result of Defendant's conduct.

38. Defendant further violated the above provisions of the CROA through its deceptive and misleading representations regarding the savings consumers can experience through using its services. Defendant represents that consumers can save significantly through Defendant's services. However, Defendant's undisclosed fees and failure to act promptly results in the savings consumers actually experience being substantially less than what was represented by Defendant. Defendant engages in this deceptive and misleading conduct in order to convince consumers to use its services by promising unrealistic outcomes. That consumers only become wise to

Defendant's deception until thousands in payments have been made only further demonstrates the egregious and fraudulent nature of Defendant's conduct.

39. Defendant further violated the above provisions of the CROA through its deceptive representations regarding the efficacy of its services. Defendant's deceptively represents the efficacy of its services and the nature of its expertise so as to convince consumers to pay it thousands of dollars to achieve results anyone could achieve, let alone Defendant's more reputable competitors.

40. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the fees that would be assessed in connection with the services offered. Defendant suggested to Plaintiff that his payments would go towards resolving his enrolled obligations; however, Defendant deceptively omitted the fact that there would be extensive charges for various fees and services that were not properly explained to Plaintiff, including the fees charged by Defendant. Defendant's conduct was designed to convince Plaintiff that utilizing Defendant' services would be beneficial and result in substantial savings, while failing to mention any information that would make Plaintiff rethink the appropriateness of Defendant' program.

41. Defendant further violated the above provisions of the CROA through its fraudulent and deceptive conduct in making certain representations to induce consumers to use its services, only to cut against those representations in its contract with consumers. Defendant's inclusion of an integration clause further illustrates the extent to which Defendant is seeking to insulate itself from liability for the manner in which it markets its services to consumers.

    b. **Violations of CROA § 1679b(b)**

42. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

43. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendant charged Plaintiff and charges consumers an upfront "retainer" fee prior to any work being performed, and Plaintiff's monthly payments went towards various legal and other fees which were retained by Defendant prior to performing services or which were in connection with services Defendant never performed.

### c. Violation of CROA § 1679c

44. The CROA, pursuant to 15 U.S.C. § 1679c, outlines various disclosures that CROs must provide to consumers prior to entering into contracts with consumers.

45. Defendant violated § 1679c through its complete failure to provide Plaintiff a copy of the disclosures required.

### d. Violation of CROA §§ 1679d & 1679e

46. The CROA, pursuant to 15 U.S.C. § 1679d, outlines various requirements for any contracts between CROs and their customers, including "a conspicuous statement, in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight on the 3rd business day after the date on which you signed the contract. See attached notice of cancellation form." Further, 15 U.S.C. § 1679e requires copies of the required notice of cancellation to be provided to consumers.

47. Defendant violated §§ 1679d & e through its noncompliant contract and failure to provide Plaintiff a disclosure of his rights to cancel any contract. Defendant's contract fails to include the requisite conspicuous disclosure about his right to cancel the contract, nor did Defendant provide the notice of cancellation form as required under the CROA.

48. Due to Defendant's noncompliant contract, such contract is void and unenforceable pursuant to 15 U.S.C. § 1679f(c).

  e. **Violation of CROA § 1679f(b)**

49. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

50. Defendant violated 15 U.S.C. § 1679f(b) through their attempt to obtain Plaintiff's waiver of the protections afforded him under the CROA. Defendant' contracts contain numerous efforts to obtain a waiver of Plaintiff's vital consumer protection rights protected by the CROA, including but not limited to an attempt to obtain a waiver of Plaintiff's right to assert claims for the manner in which Defendant marketed its services to consumers.

51. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, DOUGLAS G. BOHM, respectfully requests that the Honorable Court enter judgment in his favor as follows:

 a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

 b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE COLORADO CREDIT SERVICES ORGANIZATION ACT

52. Plaintiff restates and realleges paragraphs 1 through 41 as though fully set forth herein.

53. Plaintiff is a "buyer" as defined by Colo. Rev. Stat. § 5-19-103(1).

54. Defendant is a "credit services organization" as defined by Colo. Rev. Stat. § 5-19-103(2).

55. Upon information and belief, the carve out for attorneys does not apply because Defendant did not have any attorney licensed in Colorado providing the services nor were the services within the scope of their practice as attorneys.

    a. **Violations of Colo. Rev. Stat. § 5-19-104**

56. The CCSOA, pursuant to Colo. Rev. Stat. § 5-19-104(1)(a), provides that no CSO shall "charge or receive any money or other valuable consideration prior to full and complete performance of the services the credit services organization has agreed to perform for the buyer."

57. Defendant violated § 5-19-104(1)(a) in much the same way it violated § 1679b(b) of the CROA.

58. The CCSOA, pursuant to Colo. Rev. Stat. § 5-19-104(1)(c), provides that no CSO shall "make or use any untrue or misleading representation in the offer or sale of the services of a credit services organization or engage, directly or indirectly, in any act, practice, or course of business that operates or would operate as fraud or deception upon any person in connection with the offer or sale of the services of a credit services organization."

59. Defendant violated § 5-19-104(1)(c) in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

### b. Violations of Colo. Rev. Stat. § 5-19-105

60. The CCSOA, pursuant to Colo. Rev. Stat. § 5-19-105, outlines required disclosures that must be provided by CSOs to consumers prior to entering in contracts with such consumers.

61. Defendant violated § 5-19-105 through its failure to provide Plaintiff the requisite disclosures and information prior to entering into a contract with Plaintiff.

### c. Violations of Colo. Rev. Stat. § 5-19-107

62. The CCSOA, pursuant to Colo. Rev. Stat. § 5-19-107, outlines the various requirements for CSO contracts with consumers.

63. Defendant violated § 5-19-107 through its failure to include the information required by the CCSOA in its contract with Plaintiff.

### d. Violations of Colo. Rev. Stat. § 5-19-108

64. The CCSOA, pursuant to Colo. Rev. Stat. § 5-19-108(1), provides that "any attempt by a credit services organization to have a buyer waive rights given by [the CCSOA] is a violation of [the CCSOA]."

65. Defendant violated § 5-19-108(1) in much the same way it violated § 1679f(b) of the CROA.

WHEREFORE, Plaintiff, DOUGLAS G. BOHM, respectfully requests that the Honorable Court enter judgment in his favor as follows:

   a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

   b. Awarding Plaintiff actual damages pursuant to Colo. Rev. Stat. § 5-19-111(1);

   c. Awarding Plaintiff punitive damages pursuant to Colo. Rev. Stat. § 5-19-111(2);

    d.  Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Colo. Rev. Stat. § 5-19-111(1); and,

    e.  Awarding any other relief the Honorable Court deems just and appropriate.

**COUNT III – VIOLATIONS OF THE COLORADO UNIFORM DEBT-MANAGEMENT SERVICES ACT**

66. Plaintiff restates and realleges paragraphs 1 through 65 as though fully set forth herein.

67. Defendant is a "provider" of "debt management service" as defined by Colo. Rev. Stat. §§ 5-19-202(8)(A) & (15).

68. Upon information and belief, Defendant is not subject to the carve out for attorneys because its debt settlement services were not legal in nature, nor were any attorneys licensed in the state of Colorado providing the services that were provided to Plaintiff.

    a.  **Violations of Colo. Rev. Stat. § 5-19-215**

69. The CDMSA, pursuant to Colo. Rev. Stat. § 5-19-215, provides that "a provider shall act in good faith in all matters under [the CDMSA]."

70. Defendant violated § 5-19-215 through the bad faith with which it approached its dealings with Plaintiff, as outlined above.

    b.  **Violations of Colo. Rev. Stat. § 5-19-220**

71. The CDMSA, pursuant to Colo. Rev. Stat. § 5-19-220, outlines the nature of a consumer's right to cancel an agreement with a provider, and how that right must be disclosed.

72. Defendant violated § 5-19-220 through its failure to contain the requisite information or disclosures required under the CDMSA.

    c.  **Violations of Colo. Rev. Stat. § 5-19-223**

73. The CDMSA, pursuant to Colo. Rev. Stat. § 5-19-223, outlines the manner in which providers can charge consumers fees for the services being provided. Pursuant to § 5-19-223(d)(2),

13

no payment could be charged for any services until settlements had been reached and at last one payment had been made.

74. Defendant violated § 5-19-223 through the nature of its unlawful and exorbitant fees assessed in plain contravention of Colorado law. Defendant charged upfront fees, including but not limited to retainer fees, before settling any debts for Plaintiff.

### d. Violations of Colo. Rev. Stat. § 5-19-228

75. The CDMSA, pursuant to Colo. Rev. Stat. § 5-19-228(a)(1), provides that a provider may not, directly or indirectly "misappropriate or misapply money held in trust."

76. Defendant violated § 5-19-228(a)(1) through its misappropriation of Plaintiff's payments.

77. The CDMSA, pursuant to Colo. Rev. Stat. § 5-19-228(a)(15), prohibits a provider from employing "an unfair, unconscionable, or deceptive act or practice, including the knowing omission of any material information."

78. Defendant violated § 5-19-228(a)(15) in much the same way it violated the numerous provisions of the CROA outlined above.

79. The CDMSA, pursuant to Colo. Rev. Stat. § 5-19-228(a)(16), provides that no provider shall "advise, encourage, or suggest to the individual not to make a payment to creditors under the plan."

80. Defendant violated § 5-18-228(a)(16) through its suggestion to Plaintiff that he should cease making payments to his creditors on enrolled debts.

WHEREFORE, Plaintiff, DOUGLAS G. BOHM, respectfully requests that the Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Colo. Rev. Stat. § 5-19-235(c)(1);

    c. Awarding Plaintiff statutory damages pursuant to Colo. Rev. Stat. § 5-19-235(c)(2);

    d. Awarding Plaintiff punitive damages pursuant to Colo. Rev. Stat. § 5-19-235(c)(3);

    e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Colo. Rev. Stat. § 5-19-235(c)(4), and,

    f. Awarding any other relief the Honorable Court deems just and appropriate.

Dated: May 12, 2023                                               Respectfully submitted,

<u>s/ Nathan C. Volheim</u> (Lead Attorney)
Nathan C. Volheim, Esq. #6302103
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 568-3056 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com